UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

KIMBERLY CUNNINGHAM,           ]
                               ]
    Plaintiff,                 ]
                               ]
vs.                            ]       7:09-cv-00866-LSC
                               ]
NATURE'S EARTH PELLETS, L.L.C.,]
                               ]
    Defendant.                 ]

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration a motion for summary judgment, which was filed by Nature's Earth Pellets, L.L.C. ("Defendant"), on April 30, 2010. (Doc. 25.) Plaintiff Kimberly Cunningham ("Cunningham" or "Plaintiff") sued Defendant for disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 2611, *et seq.* and violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* (Doc. 1.) Cunningham moved to voluntarily dismiss her claims under the FMLA on August 26, 2009. (Doc. 20.) Defendant has moved for summary judgment on all of Plaintiff's remaining claim under the ADA. (Doc. 25.) The issues raised in Defendant's

motion for summary judgment have been briefed by both parties and are now ripe for review.  Upon full consideration of the legal arguments and evidence presented, Defendant's motion for summary judgment will be granted.

II.     Facts.[1]

Defendant makes wood pellets from pine shavings for cat litter and pellet-burning heaters, maintaining one of its facilities in Reform, Alabama. Cunningham began working for Defendant in October 2004.  She worked for approximately one year packing bags of Defendant's product in boxes for customers such as Target and Wal-Mart.  Her last position with Defendant was as a shipping clerk, a position in which she coordinated the shipping logistics of Defendant's products.  She was the only shipping clerk at the facility.  Mark Finch ("Finch"), the production manufacturing and shipping supervisor, was Cunningham's supervisor.

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Defendant's employee handbook prohibits the use, possession, transportation, promotion or sale of illegal drugs or controlled substances without a valid prescription by employees while on Company premises. Finch testified that every employee he is aware of that has failed a drug test has been terminated. The handbook further explains that absenteeism and tardiness place a burden on other employees, on an employee's productiveness, and on the overall operation of the company. As a result, Defendant has instituted an attendance policy based on a point system. Under this policy, tardiness results in one point. If an employee misses an entire day, two points are assigned. The handbook warns that once an employee reaches nine points, they may be terminated for absenteeism.

As of September 2006, Cunningham had accumulated nine points based on absences, mostly as the result of an ongoing custody battle. On September 18, 2006, Finch met with Cunningham and warned her that any further absences would result in termination. On December 7, 2006, Cunningham received a written warning regarding her performance issues. Despite these warnings, by April 2007, Cunningham had accumulated additional points for absenteeism and tardiness.

On April 10, 2007, Cunningham worked her regular shift. After her shift, she had an appointment with her psychologist, after which she was admitted to the Bradford Center ("Bradford"). Cunningham apparently suffered a nervous breakdown in her psychologist's office as a result of the combination of a chemical imbalance caused by anti-depressants and her ongoing custody battle. She was admitted to Bradford because her psychologist, doctor, and lawyer felt it was in her best interest to detoxify herself. Cunningham indicated to the Bradford Center that she had been abusing Xanax, Lortab, Klonopin, and Darvocet, although she disputes classifying her addiction to prescription drugs as abuse. She also admitted to smoking marijuana, including on the day she was admitted.

Following her admission to the hospital, Cunningham did not know how long she would be in Bradford. Cunningham testified that she called Finch and told him only that she was being admitted to the hospital. Finch also received a call from a nurse at Bradford, but she only told him that Cunningham had been admitted. Because of privacy issues, she was unable to elaborate further. Finch attempted to gain clarification by calling Cunningham's parents who, while confirming that she was in Bradford, would not elaborate on her condition. Bradford sent a letter to Defendant on April

12, 2007, stating that Cunningham had been admitted and that the length of her stay would be determined at a later time.

Initially, Defendant took a wait and see approach to Cunningham's absence. Finch filled in for her, forcing him to work six days a week, twelve to sixteen hours a day. On April 12, however, when it became apparent that Cunningham would be indefinitely absent, Finch and Ken Simard ("Simard"), the owner of the company, decided that, given Cunningham's ongoing absenteeism, she should be terminated.

After nine days at the facility, Cunningham left Bradford because she disagreed with her treatment program and refused to spend three months in a halfway house in Florida. Her treatment records from Bradford indicate that she made little progress during her stay, her prognosis was poor, and she was discharged against medical advice.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224

(11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

Plaintiff claims that Defendant violated the ADA when it terminated her for abandoning her job rather than allowing her time off to participate in a treatment program at Bradford.  The Eleventh Circuit applies "the burden-shifting analysis of Title VII employment discrimination claims" to ADA discrimination claims.  *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007).  Under the framework established in *McDonnell Douglas Corp. v. Green*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  411 U.S. 792, 802 (1973).  Once the plaintiff has demonstrated a *prima facie* case exists, the burden shifts to the defendant to "articulate some legitimate, non-discriminatory reason for the [adverse employment action]."  *Id.*  This burden is "exceedingly light. . . . At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof."  *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983)(citation and internal quotation marks omitted)).

Lastly, the burden returns to the plaintiff to prove by a preponderance of the evidence that the defendant's reasons were simply pretext for discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.").

    A.    Prima Facie Case of Disability Discrimination.

"In order to establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that [she] (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of [her] disability." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000)). "This standard derives from the ADA's language, stating that 'no [employer] shall discriminate against a qualified individual with a disability because of the disability of such an individual.'" *Id.* (quoting 42 U.S.C. § 12112(a). Defendant contends that Plaintiff cannot satisfy her burden to show that she is disabled or a "qualified individual."

        1.    Disability.

"For the first element of an ADA claim, a plaintiff qualifies as disabled under the ADA if [she] has '(A) a physical or mental impairment that substantially limits one or more of the major life activities . . . ; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment.'" *Id*. at 1264 (quoting 42 U.S.C. § 12102(2)).  Plaintiff argues that she has an actual disability under the ADA, and she was regarded as having a disability.

      a.    Actual Disability.

Plaintiff argues that her addiction to prescription drugs limits her ability to treat her depression and anxiety, thus resulting in disability under the ADA.  Under the ADA, "[m]erely having an impairment does not make one disabled for purposes of the ADA." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002), *superseded by statute on other grounds by* ADA Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110-325, 122 Stat. 3353 (2008).  In order to qualify as disabled, a plaintiff must show that the impairment limits a major life activity, and the limitation is "substantial." *Id*.  "Terms like "substantial" must be "interpreted strictly to create a demanding standard for qualifying as disabled." *Id*. at 197, *superseded by*

ADAAA, Pub.L. No. 110-325, 122 Stat. 3353 (2008).[2]  "Substantial" indicates "considerable," or "to a large degree," rather than "in only a minor way." *Id*. at 196.  A substantially limiting impairment "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id*. at 198.  In other words, a plaintiff must be "significantly restricted as to the condition, manner or duration under which the average person in the general population can perform the same major life activity." *Rossbach v. City of Miami*, 371 F.3d 1354, 1357 (11th Cir. 2004) (quoting 29 C.F.R. § 1630.2(j)(1)).  "[M]itigating measures must be

---

[2]The ADA Amendments Act of 2008 ("the ADAAA"),  Pub.L. No. 110-325, 122 Stat. 3353, became effective on January 1, 2009.  The ADAAA specifically rejects as inappropriately narrow and restrictive the disability standards articulated by the U.S. Supreme Court in *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), and *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999).  All of the conduct alleged in the Complaint occurred before the ADAAA became effective.  Plaintiff has not argued that the ADAAA applies to her claims, and the majority of courts addressing the issue have held that the ADAAA is not retroactive.  *See, e.g.*, *E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009); *Kiesewetter v. Caterpillar Inc.*, 295 F. App'x. 850, 851 (7th Cir. 2008); *Verhoff v. Time Warner Cable, Inc.*, 299 F. App'x. 488, 494 (6th Cir. 2008); *Geoghan v. Long Island R.R.*, No. 06-CV-1435, 2009 WL 982451, at *8-9 (E.D.N.Y. Apr. 9, 2009) (Pollak, M.J.).  While the Eleventh Circuit Court of Appeals has not addressed the issue in a published opinion, the court's ruling in an unpublished decision suggests that the ADAAA does not apply retroactively.  *Fikes v. Wal-Mart, Inc.*, 322 F. App'x 882, 883 n.1 (11th Cir. 2009) ("Plaintiff makes no argument that the amendments should apply retroactively; and absent Congressional expression to the contrary, a presumption against retroactive application applies when the new legislation would 'impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'").  Therefore, like the *Fikes* court, "we look to the ADA as it was in effect at the time of the alleged discrimination." *Id*.

taken into account in judging whether an individual possesses a disability." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 565 (1999) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999)). And, "[t]he impairment's impact must[] be permanent or long term." *Toyota Motor Mfg.*, 534 U.S. at 198.

Plaintiff has failed to provide evidence of the type of substantial and severe impairment necessary to establish a disability. While depression and addiction are certainly impairments, the substantial limitation test requires that Plaintiff show how these impairments caused major disruptions in her life. Plaintiff has argued that "the addiction forced her to live with the unmitigated, and often exaggerated, effects of her depression and anxiety disorder." (Doc. 27 at 18-19.) Plaintiff testified that she suffered around ten panic attacks a month, lasting between ten and fifteen minutes each. (Doc. 25, Ex. D, Cunningham Depo. at 195-196.) Plaintiff claims that these attacks affect her ability to breath and sleep. Despite these attacks, Plaintiff conceded that in April 2007, she was able to perform manual tasks, walk without difficulty, see without difficulty, and speak without difficulty. (*Id.* at 185-186.) Plaintiff testified that despite her problems, she was able to work, stating, "I pushed myself to go to work everyday. Just to get

through the day I would have to push myself because functioning, you know, concentrating, staying focused, resting, sleeping, eating, yeah." *Id.* at 183:23-184:5. It therefore appears that with effort Plaintiff is able to function despite her limitations.

Her time at Bradford supports this contention. Apparently, Plaintiff did not see eye to eye with her doctors at Bradford. Her records indicate she "made no progress on her individual treatment assignments and continually violated Bradford's policies and was disrespectful to staff." *Id.* at 135:9-13. Her discharge indicated, "Prognosis was poor due to refusal of recommendations. The patient discharged against medical advise on April 19, 2007." *Id.* at 137:11-16. Despite these setbacks, Plaintiff was apparently ready and able to report to work on April 19, only nine days after she entered the program. *Id.* at 159:5-8. While Plaintiff suffers from legitimate health problems, she has failed to show that any of her conditions substantially limits one or more major life activities. Therefore, she cannot establish that she is actually disabled under the ADA.

    b. Regarded as Disabled.

Plaintiff alleges in the alternative that the Defendant terminated her because they regarded her as having a disability. A plaintiff is regarded as

disabled "if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." *D'Angelo*, 422 F.3d at 1228 (quoting *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 521-22 (1999)). "Thus, '[a]n employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity.'" *Id*. (quoting *Sutton*, 527 U.S. at 490). In order "for a plaintiff to prevail under this theory, he must show two things: (1) that the perceived disability involves a major life activity; and (2) that the perceived disability is 'substantially limiting' and significant." *Rossbach*, 371 F.3d at 1360 (citing *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir. 1999)).

  Plaintiff, however, has produced no evidence that Defendant terminated her because of her addiction or depression. Plaintiff's only support comes from the allegation that Finch and Simard did not terminate Plaintiff until they saw a fax from Bradford, a facility known to treat addiction. (Doc. 27 at 19-20.) The problem with this argument is that Defendants learned that Plaintiff was at Bradford on April 11, a day before they received the fax and terminated Cunningham for absenteeism. At that

time, however, Defendant took a wait and see approach rather than terminating Plaintiff immediately. (Doc. 25, Ex. A, Finch Depo. at 87:13-23.) Perhaps more importantly, simply showing Defendant was aware of Plaintiff's limitations is not sufficient to establish she was regarded as disabled. *See, e.g., Simpson v. Ala. Dep't of Human Res.*, 311 Fed. Appx. 264, 268 (11th Cir. 2009) ("The fact that Wayne Sellers, Director of the Marshall County DHR, may have been aware of Simpson's conditions while he was employed by the DHR was clearly insufficient to establish that Sellers perceived him to have a disability.").

2. Qualified Individual.

Even if Plaintiff were able to able to show a disability, she is unable to show that she is a "qualified individual" under the ADA. In order to be a qualified individual, Plaintiff must be able to show that she could perform the functions of her job with reasonable accommodation. *Lucas v. W. W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). "An accommodation is reasonable, and thus required under the ADA, only if it allows the employee to perform the essential functions of the job." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). "The plaintiff bears the burden

of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions." *Id.* (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997); *Willis v. Conopco, Inc.*, 108 F.3d 282, 283 (11th Cir. 1997)).

The Eleventh Circuit has repeatedly held that indefinite leave is not a reasonable accommodation. In *Wood v. Green*, the Eleventh Circuit found that a request for indefinite leave by a plaintiff suffering from cluster headaches was unreasonable, holding, "[A]n accommodation is unreasonable if it does not allow someone to perform his or her job duties in the present or in the immediate future." 323 F.3d 1309, 1314 (11th Cir. 2003). The court in *Wood* noted that the provisions of the ADA "contain no reference to a person's future ability to perform the essential functions of his position. To the contrary, they are formulated entirely in the present tense, framing the precise issue as to whether an individual 'can'(not 'will be able to') perform the job with reasonable accommodations." *Id.* at 1313 (citations omitted). The court explained that an employer does not violate the ADA by "refusing to grant an employee a period of time in which to cure his

disabilities where the employee sets no temporal limit on the advocated grace period, urging only that he deserves sufficient time to ameliorate his conditions." *Id.* (citations omitted).

Drawing all reasonable inferences in favor of Plaintiff, it is evident that she is not a qualified individual under the ADA. Attendance is a central part of Plaintiff's position with Defendant. As shipping clerk, Plaintiff was responsible for coordinating with trucking companies to pick up product, ensure that sufficient product was available on site, coordinate traffic logistics with other employees, and line up orders to ship out. (Doc. 25, Ex. A, Finch Depo. at 74:23-75:7.) Plaintiff was the only shipping clerk, and when she could not perform her duties, Finch had to fill in. *Id.* at 75:17-23. Plaintiff has testified in her deposition that she called Finch when she was admitted to Bradford. (Doc. 25, Ex. D, Cunningham Depo. at 93:21-94:13.) The only thing she remembers telling him is that she was being admitted to the hospital. *Id.* at 94:17-22. At the time, Plaintiff had no idea how long she would be at Bradford. She testified, "They don't give a discharge date upon entering there. No, sir. I was, simply told a few days, a week or two. Nobody, no sir. Nobody gave me a definite time frame." *Id.* at 92:8-12.

Plaintiff reports calling Finch later during her stay at Bradford, but even at that time she "didn't have a time when I was going to come home," stating only that it would be "a couple of weeks." *Id.* at 96:20-97:2.  To the extent these conversations serve as a request for accommodation, they can only be interpreted as seeking an indefinite leave of absence.  Bradford confirmed the indefinite nature of Plaintiff's leave, stating in its letter to Defendant, "The length of stay will be determined after a complete assessment by our medical and clinical staff."  (Doc. 25, Ex. H.)  The ADA simply does not require that an employer "wait indefinitely for [a plaintiff's] medical conditions to be corrected, especially in light of the uncertainty of cure." *Wood*, 323 F.3d at 1314.

    B.    Burden Shifting.

Even if Plaintiff were able to establish a prima facie, the inquiry does not end there. "Once a plaintiff establishes a prima facie case of discrimination, the defendant-employer must articulate a legitimate, non-discriminatory reason for the challenged action." *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001) (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc)).  If the defendant

articulates a legitimate, non-discriminatory reason, "the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Id.* at 1243 (quoting *Chapman*, 229 F.3d at 1024).

As legitimate, non-discriminatory reasons for its decision to terminate Plaintiff's employment, Defendant cites extensive evidence of Plaintiff's history of absenteeism.  (Doc. 25, Exs. A,  Finch Depo. at 191-198; E; F.) Clearly, failing to come to work is a legitimate reason to terminate an employee.  Plaintiff simply provides no evidence to show that this line of thinking is pretextual and "unworthy of credence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).  Instead, Plaintiff relies on the statements of Fitch and Simard that Plaintiff was terminated for not coming to work on April 11 and 12 and that if she had asked for a reasonable amount of leave beforehand, it would have been granted.  (Doc. 27, 31-32.) Of course, this describes a hypothetical situation that does not exist.  What

Fitch and Simard might have done in a completely different situation does not show that their reasons for acting were pretextual. It merely shows that Defendant had shown a continuing willingness to work with Plaintiff, despite her absenteeism. Plaintiff has failed to cast doubt on Defendant's motives, and has therefore failed to show pretext.

V.   Conclusion.

For the reasons set forth above, Defendant's motion for summary judgment will be GRANTED. A separate order will be entered.

Done this <u>19th</u> day of <u>July 2010</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671